United States District Court
Southern District of Texas
**ENTERED**
October 15, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| FRED HOFFMAN III, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-235 |
| | § | |
| COREY FURR, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND
## <u>RECOMMENDATION TO DISMISS ACTION</u>

Plaintiff Fred Hoffman is a Texas inmate appearing *pro se* and *in forma pauperis*. He filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A. For purposes of screening, the undersigned recommends Plaintiff's complaint be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for the reasons set forth below. The undersigned recommends further that the dismissal of this case counts as a "strike" for purposes of 28 U.S.C. § 1915(g).[1]

---

[1] Plaintiff is **WARNED** that if he accumulates three strikes, he will not be allowed to proceed *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious injury. *See* 28 U.S.C. § 1915(g).

## I.      JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.      PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID).   Plaintiff's claims in this lawsuit occurred in connection with his current assignment to the McConnell Unit in Beeville, Texas.

On August 13, 2018, Plaintiff filed his original complaint, naming the following officials as defendants: (1) Corey Furr, Assistant Warden; (2) Dr. Kwarteng; (3) PA Corbett; (4) Tanya Lawson, Senior Practice Manager; and (5) Ben Raimer, Correctional Healthcare Manager for the University of Texas Medical Branch ("UTMB").   Plaintiff alleges that Defendants acted with deliberate indifference to his serious diabetic condition, engaged in acts of retaliation, and have violated his equal protection rights.

Plaintiff seeks the following injunctive relief: (1) insulin shots three time a day; (2) the reinstatement of medications identified as Lantus and Neurotin; (3) a special diabetic diet; (4) snacks with AM insulin shots; (5) the immediate cessation of disciplinary cases for failure to attend the 3:00 a.m. insulin appointments; (6) special socks and shoes for diabetic nerve pain in the legs and feet; and (7) declaration that Defendants violated Plaintiff's right not to be subject to retaliation.   (D.E. 1, p. 9).  Plaintiff also seeks to represent other diabetic inmates who are similarly situated to him and have received inadequate treatment for their diabetic condition.  (D.E. 1, p. 1).

A *Spears*[2] hearing was conducted on September 5, 2018.   The following representations were made either at the *Spears* hearing, in Plaintiff's original complaint (D.E. 1), or in Plaintiff's exhibits (D.E. 4):

## A.   Background Allegations

Plaintiff is 42 years old.   In May 2011, he entered into TDCJ custody and was initially housed at the Byrd Unit.   Prior to his transfer into TDCJ custody, Plaintiff was housed in an Oklahoma federal prison pursuant to a conviction out of the Western District of Oklahoma.   Plaintiff arrived at the McConnell Unit sometime later in May 2011.

In 2007, when Plaintiff was 32 years old, he was diagnosed in the free world as a Type II diabetic.   At that time, Plaintiff received regular insulin on a sliding scale basis as well as a drug called Lantus.   Insulin is necessary to regulate the sugar traveling through a patient's blood.   Lantus is a synthetic injectable insulin designed to replace NPH insulin, which is another injectable insulin.   According to Plaintiff, Lantus is much more effective in treating and lowering A1C levels than either regular or NPH insulins.

## B.   Allegations Regarding the Denial of Adequate Medical Care

Plaintiff received Lantus for his diabetic condition during the first six months of his incarceration at the McConnell Unit.   During this time period, Plaintiff received Lantus at 10:00 a.m. and 3:00 p.m.   Plaintiff's hemoglobin-A1C (A1C)[3] levels were

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

[3] A hemoglobin-A1C blood test determines an individual's blood sugar level over a 3-month range.   *See Hudson v. University of Texas Medical Branch*, No. C-08-254, 2008 WL 11351341, at *1 (S.D. Tex. Sep. 23, 2008).

under control at around 6.  Sometime in 2011 or early 2012, Plaintiff stopped receiving Lantus and began receiving NPH insulin.  This type of injectable insulin is long-acting and operates to lower A1C and blood sugar levels over a period of twelve hours.

Dr. Teresa Witt and Nurse Sandra Moreno made the decision for Plaintiff to switch from Lantus to NPH insulin.  Plaintiff was informed that this change was made due to the high cost of Lantus compared to NPH insulin.  Based on Plaintiff's experience in the free world, Lantus was not much more expensive than NPH insulin.  Plaintiff received his Lantus at 10:00 a.m., but this arrangement changed when insulin appointments scheduled for this time were cancelled.  Dr. Witt and Nurse Moreno were subsequently terminated from their employment.

Plaintiff further states that he was treated in the free world and at the federal prison with Neurotin, a drug used to alleviate diabetic nerve pain in the hands and feet. Plaintiff, however, stopped receiving this drug at the McConnell Unit.  He was likewise informed that this drug was too expensive.  PA Corbett and Dr. Witt are alleged to have made the decision not to prescribe Neurotin to Plaintiff.  Dr. Kwarteng and PA Corbett instead placed Plaintiff on a psychiatric medication called Afexor, which allows the patient to effectively ignore the nerve pain.

Dr. Kwarteng and PA Corbett issue insulin to diabetic inmates at 3:00 a.m. Plaintiff currently receives insulin once a day at 3:00 in the afternoon, even though he should be receiving it at least two times.  Plaintiff testified that he was also allowed to receive NPH insulin at 3:00 a.m.  However, Plaintiff signed a document with PA Corbett which states that he permanently refuses to take his insulin shot at that early morning

hour.  Plaintiff further testified that in his opinion he did not need the morning shot to regulate his blood sugar levels in the early morning because he was obese and often skipped breakfast and lunch.  Plaintiff indicated that when he attended the 3:00 a.m. appointment, his A1C level was 9.

When a diabetic inmate fails to attend the 3:00 a.m. insulin appointment, Warden Furr routinely issues a disciplinary case against that inmate.  Until Plaintiff signed the permanent refusal document, he had received a total of fourteen disciplinary cases for not attending the 3:00 a.m. appointment time.  All but one of these cases was dismissed with only a verbal reprimand.  Plaintiff was found guilty in February 2015 in a disciplinary case brought by Officer Anazor and was punished with the loss of five days of recreation time.  (D.E. 4-1, p. 19).

Dr. Kwarteng and PA Corbett are alleged to be responsible for Plaintiff's current medical care.  As part of Plaintiff's treatment plan, Plaintiff takes a variety of pills for seizure issues and post-traumatic stress disorder (PTSD).  While Plaintiff receives insulin shots once a day, his treatment providers advise that Plaintiff should receive insulin twice a day.   Nevertheless, Plaintiff alleges that as a result of Plaintiff's current inadequate treatment for his diabetic condition, he is now at stage 2 renal failure and his A1C level has jumped to 14.   Plaintiff also suffers from fatigue, headaches, weight gain, and muddled thinking.  Plaintiff acknowledges that he could be receiving insulin twice a day but for the fact he signed the permanent refusal document.  Plaintiff believes, however, that the early appointment time placed a burden on him by depriving him of necessary sleep.

Plaintiff is not on a special diet at the McConnell Unit.  According to Plaintiff, other units have special diets in place for diabetic inmates.  Inmates receive a snack at the 3:00 p.m. insulin appointment but do not receive a snack at the 3:00 a.m. insulin appointment.  Other units, in contrast, provide snacks after every insulin appointment. Plaintiff further requested special socks and shoes for his diabetic nerve pain from each defendant but was told that the socks and shoes were too expensive.

According to Plaintiff, Defendant Raimer from the UTMB is in charge of the policy regarding inmates' medical care in the region where the McConnell Unit is located.  Defendant Raimer implemented the policy that stopped insulin shots three times a day.  Plaintiff believes that Mr. Raimer has the power to change the policies regarding the issuance of certain medications and the timing of same provided to diabetic inmates.

### C.  Allegations of Retaliation

In a Step 1 grievance dated February 18, 2015, Plaintiff appealed from his February 2015 disciplinary case, contending that Officer Anazor acted with bias and that his constitutional rights were violated in several respects.  (D.E. 4-2, pp. 2-3).  The reviewing officer denied this grievance, finding that the "disciplinary charge is appropriate for the offense and the guilty verdict was supported by the preponderance of the evidence."  (D.E. 4-2, p. 3).

In 2017, Plaintiff filed grievances with respect to the scheduling of insulin appointments, the type of insulin received, and other issues related to the care provided to diabetic inmates.  In a Step 1 grievance dated October 12, 2017, Plaintiff complained about the medical care he received regarding his diabetic condition.  (D.E. 4-1, pp. 4-5).

Plaintiff requested that his 10:00 a.m. insulin appointment as well as Lantus injections be reinstated. (D.E. 4-1, p. 5). Defendant Lawson rejected Plaintiff's Step 1 grievance, noting that Plaintiff only received a 10:00 a.m. insulin injection on one occasion and that his failure to attend the 3:00 a.m. insulin appointment is a violation of TDCJ policy. (D.E. 4-1, p. 5). Plaintiff's Step 2 grievance, filed on December 15, 2017, was also rejected based on documentation showing that Plaintiff was never under orders to receive insulin at 10:00 a.m. and that Plaintiff had not received Lantus since May 2011. (D.E. 4-1, p. 7).

In a Step 1 grievance dated October 13, 2017, Plaintiff complained about not receiving snacks after getting an insulin shot and going several hours between meals without getting a snack. (D.E. 4-1, p. 9). Defendant Lawson rejected this Step 1 grievance, noting that it was Plaintiff's responsibility to obtain his insulin shot prior to eating and that morning snacks are not an option available to Plaintiff as part of his diet. (D.E. 4-1, p. 10). Plaintiff's Step 2 grievance, filed on December 11, 2017, was also rejected. (D.E. 4-1, p. 12).

Plaintiff believes he has been subjected to retaliation since filing his grievances. Plaintiff testified that Officer Anazor often wakes Plaintiff up early in the morning by shining a light into Plaintiff's face, thereby contributing to his sleep deprivation. Plaintiff testified that Assistant Warden Furr was responsible for this retaliation as the officer in charge. Plaintiff informed Warden Furr about what was going on but failed to take any remedial action. Defendant Lawson, who is responsible as the administrator for answering every medical grievance filed, is alleged to have falsified her answers or

provided misleading information to Plaintiff's grievances by improperly stating that Plaintiff had only attended the 10:00 a.m. insulin appointments once.

### D.   Allegations of an Equal Protection Violation

Plaintiff testified that an inmate named Opie Toland was allowed to keep taking Lantus for his diabetic condition.   Inmate Toland was then reportedly threatened by prison officials he would not receive Lantus anymore if he ever confided to Plaintiff he was still receiving the drug or otherwise filed any grievances or complaints about his care.   According to Plaintiff, other inmates are receiving Neurotin for their diabetic nerve pain.

## III.   LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.   28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact.   *Neitzke v. Williams,* 490 U.S. 319 (1989).   A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."   *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).   A claim has no arguable basis in fact if "after providing the plaintiff the

opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the

victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

## IV.   DISCUSSION

### A.   Deliberate Indifference to Serious Medical Needs

Plaintiff alleges that Defendants acted with deliberate indifference to his serious diabetic condition.  Prisoners are protected from cruel and unusual punishment by the Eighth Amendment.  While not mandating a certain level of medical care for prisoners, the Eighth Amendment imposes a duty on prison officials to ensure that inmates receive adequate medical care.  *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

Prison officials are liable for failure to provide medical treatment if they are deliberately indifferent to a prisoner's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976).  Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment.  *Id.* at 104-05.  A prison official acts with deliberate indifference if she knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  *Farmer*, 511 U.S. 825, 847 (1994).  The official must both be aware of facts from which an inference of substantial risk of serious harm can be drawn and also draw the inference.  *Easter*, 467 F.3d at 463.  A prison official's knowledge of substantial risk may be inferred if the risk was obvious.  *Id.*

"Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). Delay in treatment may be actionable under § 1983 only if there has been deliberate indifference and the delay results in substantial harm. *Stewart v. Murphy,* 174 F.3d 530, 537 (5th Cir. 1999); *Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993). An inmate displaying diabetic symptoms conveys a serious medical need, and a defendant's failure to respond to that need may constitute deliberate indifference. *Gobert,* 463 F.3d at 345 n. 12.

Although inadequate medical treatment may rise to the level of a constitutional violation, "unsuccessful medical treatment and acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with [his] medical treatment, absent exceptional circumstances." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citations omitted).

Taken as true, Plaintiff's allegations fail to state a claim of deliberate indifference to his serious medical needs against any defendant. Plaintiff's allegations primarily reflect his frustration about having the following two medications discontinued during his

confinement at the McConnell Unit due to their cost: (1) Lantus to control his insulin levels; and (2) Neurotin for his diabetic nerve pain.   Plaintiff's allegations reflect, however, that none of the named defendants initially made the decision to discontinue prescribing Lantus to Plaintiff.  Instead of receiving Lantus, Plaintiff currently receives a long-acting injectable insulin identified as NPH insulin.   While PA Corbett participated in the decision to stop prescribing Neurotin to Plaintiff, Dr. Kwarteng and PA Corbett further placed Plaintiff on a psychiatric medication called Afexor which had the effect of assisting Plaintiff in ignoring his nerve pain.

Plaintiff further complains about the elimination of the 10:00 a.m. insulin appointment time, Defendant Raimer's implementation of a policy which does not allow for receiving insulin shots three times per day, the lack of special diet plan, the failure to provide snacks after every insulin appointment, and the lack of access to special socks and shoes for diabetic nerve pain.   Plaintiff nevertheless acknowledges that: (1) Dr. Kwarteng and PA Corbett are responsible for Plaintiff's current medical care and have advised Plaintiff to receive insulin twice a day; (2) Plaintiff had access to insulin shots twice a day, with one appointment at 3:00 a.m. and the second appointment at 3:00 p.m.; and (3) Plaintiff is entitled to receive a snack after his 3:00 p.m. insulin appointment.

Plaintiff alleges no facts to suggest that any of the named defendants initially eliminated the 10:00 a.m. insulin appointment time or acted in any way to prevent Plaintiff from attending the 3:00 a.m. insulin appointment time.  Warden Furr's actions in issuing disciplinary cases for failing to attend the 3:00 a.m. insulin appointment had the effect of encouraging diabetic inmates like Plaintiff to receive necessary insulin shots as

opposed to denying such medical care.  Plaintiff's allegations also reflect that it was his own decision to stop attending the 3:00 a.m. insulin appointment in favor of getting more sleep when he signed a permanent refusal document.

Plaintiff's allegations further reflect that his A1C levels increased from 6 to 9 after his medication was changed from Lantus to NPH insulin and after the 10:00 a.m. appointment time was eliminated.   Once Plaintiff refused to participate in the 3:00 a.m. insulin appointment time, his A1C level shot up to 14.  Plaintiff currently is in Stage 2 renal failure and suffers from fatigue, headaches, weight gain, and muddled thinking. Plaintiff's allegations suggest that his recent accelerated decline in health is more attributable to his decision to forego his insulin appointment at 3:00 a.m. rather due to any actions taken by Defendants as to his medical care.

Overall, Plaintiff makes no allegations that any defendant refused to treat him, ignored his complaints, or engaged in any intentional conduct to show a wanton disregard to his serious diabetic condition.  Plaintiff's allegations instead reflect his disagreement with the medical officials' decisions to eliminate his preferred medications in favor of other medications and to require him to have two insulin appointments at 3:00 a.m. and 3:00 p.m.  Such disagreement with the medical care provided for his serious medical condition fails to rise to the level of an Eighth Amendment violation.  *See Sama*, 669 F.3d at 590.   Accordingly, the undersigned recommends that Plaintiff's deliberate indifference claims be dismissed with prejudice for failure to state a claim for relief and/or as frivolous.

### B.  Retaliation

Plaintiff claims that prison officials have engaged in acts of retaliation.  Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights.  *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972).  Retaliation is actionable "only if the retaliatory act 'is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'"  *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (quoting *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006)).

The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights.  *Morris*, 449 F.3d at 686.  Thus, "[a] prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct."  *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995).  "Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities, and prison officials may not retaliate against inmates for engaging in such protected inmates."  *Reese v. Skinner*, 322 F. App'x 381, 383 (5th Cir. 2009) (citing *Morris*, 449 F.3d at 684).

The Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts."  *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166).  In addition, the Fifth Circuit has concluded that some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further

exercise of his rights. *Morris*, 449 F.3d at 686. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.*

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). "Mere conclusory allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim." *Jones*, 188 F.3d at 325. The inmate must produce direct evidence of motivation or a chronology of events from which retaliation may be inferred. *Id.* In other words, a successful claim of retaliation requires a showing that, but for some retaliatory motive, the complained of adverse incident would not have occurred. *Woods*, 60 F.3d at 1166.

### *(1)  Assistant Warden Furr*

Plaintiff has submitted several sets of grievances which reflect that: (1) in February 2015, he appealed his disciplinary conviction by claiming that the charging officer, Officer Anazor, acted with bias (D.E. 4-2, pp. 2-3); (2) in October 2017, he filed two Step 1 grievances in which he complained about the scheduling of insulin appointments, the type of insulin received, and the failure of prison officials to provide snacks for inmates immediately after getting an insulin shot and for several hours between meals. (D.E. 4-1, p. 4, 9).

Plaintiff claims that he has been subjected to retaliation since filing his grievances in that Officer Anazor often wakes Plaintiff up early in the morning by shining a light into Plaintiff's face, thereby contributing to his sleep deprivation.  Plaintiff alleges that Assistant Warden Furr was responsible for this retaliation because he is the officer in charge and failed to take any remedial action when informed of Officer Anazor's actions.

Plaintiff's allegations of retaliation in this instance are purely conclusory.  They merely reflect his personal belief he was the victim of retaliation, and he offers no specific facts to support his threadbare allegations of retaliation.  Plaintiff provides no timeframe to suggest when Officer Anazor began to shine a light into Plaintiff's face in relation to the time he filed his grievances.

Furthermore, with respect to Assistant Warden Furr, Plaintiff alleges no facts that he had any personal involvement in connection with Officer Anazor's purported retaliatory acts.  *See Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."); *Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).  Plaintiff alleges nothing to suggest that Assistant Warden Furr personally directed Officer Anazor to shine a flashlight in Plaintiff's face as punishment for Plaintiff filing grievances related to his diabetic condition.  Accordingly, the undersigned recommends that Plaintiff's retaliation claim

against Assistant Warden Furr be dismissed with prejudice for failure to state a claim for relief and/or as frivolous.[4]

### (2)  Senior Practice Manager Lawson

Plaintiff alleges that Senior Practice Manager Lawson, who is responsible for answering every medical grievance filed, retaliated against him by falsifying her answers and/or providing certain misleading information in her response to Plaintiff's grievances. Again, Plaintiff's allegations of retaliation in this instance are purely conclusory. They merely reflect his personal belief he was the victim of retaliation, and he offers no specific facts to support his threadbare allegations of retaliation.

Furthermore, Plaintiff's allegations against Senior Practice Manager Lawson center on his dissatisfaction with her decisions to reject Plaintiff's medical grievances. Such allegations, however, fail to state a cognizable constitutional claim.  *See Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 138 (1977) (Burger, C.J., concurring) (applauding institution of grievance procedures by prisons but noting that such procedures are not constitutionally required); *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005) (prisoners do not have a federally protected liberty interest in having grievances investigated, let alone resolved in their favor); *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir.  2007) (holding that the plaintiff had no actionable § 1983 claim

---

[4] Plaintiff also has not named Officer Anazor in this lawsuit and, therefore, cannot state a claim against him.  Court records reflect that Plaintiff named Officer Anazor in a recently-filed lawsuit in this Court, *Hoffman v. Furr, et al.*, 2:18-CV-328 (S.D. Tex. Oct. 4, 2018).  Therein, Plaintiff alleges in more detail that Officer Anazor used a strobe flashlight against Plaintiff for the purpose of causing sleep deprivation.  The undersigned finds that it is appropriate to consider Plaintiff's retaliation claim against Officer Anzor in his separate lawsuit.

based on prison officials' failure to process his grievances because he had no protected liberty interest in the processing of grievances).

Accordingly, it is respectfully recommended that Plaintiff's retaliation claim against Senior Practice Manager Lawson be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

### C.  Equal Protection

Plaintiff claims that he is being treated less favorably than other inmates who receive Lantus and Neurotin for their diabetic condition.  The Equal Protection Clause of the Fourteenth Amendment states that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV § 1.  The Equal Protection Clause directs that similarly situated people should be treated alike.  *Plyler v. Doe*, 457 U.S. 202, 216 (1982).   Equal protection jurisprudence typically has been concerned with governmental classifications that affect some groups of citizens differently than others.  *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 601 (2008).  Plaintiffs in such cases generally allege that they have been arbitrarily classified as members of an identifiable group.  *Id.*

An equal protection claim can also be made when a plaintiff, rather than alleging class-based discrimination, alleges that he has been singled out as a so-called "class of one."  *Id.* (citing *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)) (per curiam).  A plaintiff makes a "class of one" claim when he alleges that he has been intentionally treated differently from others similarly situated without a rational basis for the difference in treatment.  *Id.* (citing *Olech*, 528 U.S. at 564).  "Under any rational basis standard, <u>any</u>

rational ground for the conduct in question will suffice to defeat the class-of-one claim." *Unruh v. Moore*, 326 F. App'x 770, 772 (5th Cir. 2009) (emphasis in original).

In this case, Plaintiff alleges that: (1) his prescriptions for both Lantus and Neurotin were discontinued for cost reasons; (2) Lantus provides better results than NPH insulin with respect to his blood sugar levels; (3) Neurotin provides better relief for his diabetic nerve pain than the medication he currently receives; (4) medical officials have allowed another inmate, Mr. Toland, to keep taking Lantus for his diabetic condition; (5) inmate Toland was threatened by prison officials he would not receive Lantus anymore if he ever confided to Plaintiff he was still receiving Lantus or otherwise filed any grievances or complaints about his treatment; and (6) other inmates continue to receive Neurotin for their diabetic nerve pain.  However, Plaintiff is noncompliant with the medical treatment plan established by his caregivers at the McConnel Unit.  Plaintiff testified that he has repeatedly refused to receive treatment for his diabetic condition during the early morning hours.  In fact, Plaintiff testified he signed a document in which he permanently refused to take his insulin shot at the early morning appointment.

Plaintiff has not alleged any facts that demonstrate any defendant acted with a discriminatory purpose.  Plaintiff's equal protection claim that he has been intentionally treated differently from other inmates is vague and conclusory and is contradicted by his refusal to receive treatment.  His allegations are based solely on his personal, subjective belief that he was treated differently than other similarly situated males.  Even accepting that another inmate receives Lantus or Neurotin, while Plaintiff does not, does not demonstrate a discriminatory intent or that he was similarly situated to the other inmate.

*See Pedraza v. Meyer*, 919 F.2d 317, 318 n. 1 (5th Cir. 1990) (vague and conclusory allegations that equal protection rights have been violated are insufficient to raise an equal protection claim).   The allegation that one inmate receives a certain type of medication while another inmate does not, without more, fails to state an equal protection claim.   Accordingly, it is respectfully recommended that Plaintiff's equal protection claim be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

### D.  Class Action

Plaintiff also seeks to represent other diabetic inmates who are similarly situated to him and have received inadequate treatment for their diabetic condition.  (D.E. 1, p. 1). Requests for class certification by a prisoner acting *pro se* are generally denied because the prisoner cannot "fairly and adequately protect the interests of the class."  *See* Fed. R. Civ. P. 23(a)(4) (one of the four prerequisites for class certification is a finding that the representative party can "fairly and adequately protect the interests of the class"); *Ali v. Immigration and Customs Enforcement*, No. 1:16-CV-037, 2017 WL 881102, at (N.D. Tex. Feb. 2, 2017) (denying motion to certify class filed by an immigration detainee proceeding *pro se* because he failed to show "he could fairly and adequately protect the interests of a purported class of other [immigration] detainees").  Because Plaintiff fails to state any cognizable claim and because he fails to show that he can properly serve as a representative party in a class action, the undersigned respectfully recommends that Plaintiff's request to proceed as a class action be denied.

## V.     RECOMMENDATION

For purposes of § 1915A, Plaintiff has failed to state a cognizable claim against any defendant. Accordingly, it is respectfully recommended that all of Plaintiff's claims against each of the Defendants be **DISMISSED** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).  It is respectfully recommended further that this dismissal count as a "strike" for purposes of 28 U.S.C. § 1915(g), and that the Clerk of Court be **INSTRUCTED** to send notice of this dismissal to the Manager of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov.

Respectfully submitted this 15th day of October 2018.

Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).